# CHARLES RUSSELL
## v.
# B. F. THOMAS.

*Practice—Rule 7 of Circuit Court—Service of Stallion—Recovery for.*

1.  In an action brought to recover for the service of a stallion, this court declines, in view of the evidence, to grant the motion of plaintiff to strike from the record defendant's bill of exceptions, the ground thereof being the alleged breach of a rule of the Circuit Court, or to interfere with the judgment for the plaintiff.

2.  In view of rule 7 of the Circuit Court, five days notice having been given, the only requirement is that the opposite party must have the proposed bill of exceptions, or a copy, four days before presentation; and a proper construction of the rule does not require the copy or bill of exceptions to be presented at the same time that the notice is given.

[Opinion filed May 21, 1891.]

APPEAL from the Circuit Court of Iroquois County; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. HARRIS & HOOPER, for appellant.

Mr. C. W. RAYMOND, for appellee.

LACEY, J.   The appellee moved the court to strike the appellant's bill of exceptions from the record, and this motion was reserved by us to the hearing.

The grounds of the motion are as follows : 1. The rules of the Circuit Court were violated by appellant in that he failed to give appellee or his counsel five days notice of the time and place of the presentation of the bill of exceptions to the judge.   2. That the same bill of exceptions presented to appellee's counsel, when, or the next day after the notice, was not the same as was afterward signed by the judge, hence the failure to comply with the rule.

Rule 7 of the court is as follows, as far as applies to the matter in hand, viz.: " In case the court shall extend the time

Russell v. Thomas.

for preparing and presenting for signature a bill of exceptions to a day in vacation, on or before which a bill of exceptions may be presented for the signature of the judge, it shall be the duty of the party preparing such bill of exceptions to give the opposite party five days notice of the time and place of presenting such bill of exceptions, and he shall, at the time, leave with the opposite party a copy of the proposed bill of exceptions, or shall. allow the opposite party to take the original draft of such bill and retain the same for four days for examination, and no bill of exceptions shall be signed in vacation without satisfactory proof of such service of notice and copy," etc.

We think the objections taken are not sustainable. The five days notice was given, and as we interpret the rule, the only requirement is that the opposite party must have the proposed bill of exceptions, or a copy, four days before presentation; and a proper construction of the rule does not require the copy or bill of exceptions to be presented at the same time that the notice is given. The bill of exceptions, as proposed, was delivered to appellee's counsel the next day after the notice and in time to fill the four days requirement. It is claimed that the exact bill of exceptions as presented was not the same as was finally signed by the judge. It is not pointed out wherein it differs, except that the one signed was the reporter's notes of the evidence and was longer than the one first presented. This may be, and it may have contained much that was immaterial, as most reporters' notes do. But we see nothing in the facts that would deprive the bill of exceptions first presented from being considered, as the rule states, the "proposed bill." A proposed bill was presented and we see no reason to doubt that it was in good faith, although it may not have been an exact copy of the one finally signed. The motion is overruled.

## Opinion on the Merits of the Case.

This was a claim sued on before a justice and afterward appealed to the Circuit Court, by appellee to recover for the service of his gray stallion to appellant's mare in the spring

of 1888, as claimed, for $15. The verdict resulted in favor of appellee for the amount and judgment was rendered in the Circuit Court therefor. There seems to have been on the trial in the court below but one point of dispute, i. e., whether the appellee agreed to allow the appellant, in case the mare became with foal and it died, to breed the mare back free of charge. The appellee based his claims on the grounds that the mare was bred to the horse without any special contract as to the price and the terms, and that the terms were $15 to insure a foal; that the mare became with foal from the service of the horse and that he had a right to recover. Appellant claimed a special contract that the service was to be $15 to insure his mare with foal, and in case the colt should die he had the privilege of again breeding his mare. So it will be seen that there was no dispute except as to the rebreeding in case the colt should not live. The appellant insists that the colt died, which appears to be undisputed from the evidence, and he also insists that the appellee sold his gray horse and therefore he could not breed again, and therefore is released from payment. We are inclined to think that the appellee's right to recover is made out at least *prima facie*, when he has shown that the mare was with foal, which he did, and if the appellant was entitled to recoup the value of the reservice he must show a failure to comply with such requirements on the part of appellee. There is no evidence that the reservice was to be a warranty. It was simply a privilege or an option appellant had and he might exercise it or not as he chose. If he never exercised his privilege or asked to have it granted to him he could not insist on any rebatement of appellee's charge. We find no evidence in the record that the appellee, even if such a condition is made out by the evidence, was ever put in default by appellant.

In the first place there is no evidence in the record to show when the horse was sold, except that he was sold some time before July or August, 1889. Appellant testifies that he was at the sale, but he does not state when the sale took place. Thomas says he asked appellant in August, 1889, why he didn't bring his mare back, and appellant replied " the mare had a

Russell v. Thomas.

hard time and he did not want to breed her," and he had bred all of his mares, and "you (appellee) have sold the horse." Appellant himself testifies, "at the time we had the talk in July he offered me the black horse (that is to let him breed to him). I knew the gray horse was gone and we had bred all our mares. I never told him I would not breed at the proper time, if he had the horse." This is substantially all the evidence and the question of breeding back. The appellant failed to show to the jury that he had not bred his mares before the horse was sold, or that he wanted to or would have bred the mare to the gray horse even if appellee had not sold him. He made no tender of her prior to the time he had bred his mare to another horse. If he had done so how could he know that appellee could not have complied with this supposed condition, even if he had parted with the horse? There was no evidence that appellee was ever put in default even on the supposed condition. So we think the verdict was right without reference to the instructions.

The appellant complains of the fifth instruction in that the court told the jury that " the defendant was bound to pay for the service of plaintiff's horse according to the terms on which said horse was at the time stood." This as given, was correct, as there was no disagreement as to the usual terms and what appellant insisted the contract was, except as to the privilege of rebreeding the mare. The court might have submitted the hypotheses of the appellant's supposed recoupment. But as there was no evidence on which to base it, it was not necessary. Besides, if the appellant had desired such questions submitted he should have presented a properly drawn instrument on the point. What has been said disposes of all objections as to the admissibility of evidence and other like objections. The judgment is affirmed.

*Judgment affirmed.*